IN RE FABIAN A.*
(AC 28704)

Bishop, Harper and West, Js.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued January 2—officially released March 4, 2008

*James Jude Connolly*, supervisory assistant public defender, for the appellant (respondent).

*Maura Murphy Osborne*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Susan Quinn Cobb*, assistant attorney general, for the appellee (petitioner).

*Opinion*

WEST, J. The respondent, Fabian A., appeals from the judgment of the trial court granting the motion of the petitioner, the commissioner of children and families (commissioner), to extend his delinquency commitment for an additional nine months.[1] On appeal, the respondent claims that the court, *Gleeson, J.*, improperly determined that his original plea was knowingly

---

[1] The extension of the respondent's delinquency commitment is a final judgment pursuant to General Statutes § 46b-141 (e), which provides in relevant part: "Any order of the court made under the provisions of this section shall be deemed a final order for purposes of appeal . . . ."

and voluntarily made. We agree with the respondent and reverse the judgment of the trial court.

The following facts and procedural history are relevant to our disposition of the respondent's appeal. On August 25, 2005, the respondent, at the age of fifteen, pleaded guilty to charges of disorderly conduct pursuant to General Statutes § 53a-182 and violation of probation pursuant to General Statutes § 46b-120 (6) (C). The respondent was committed to the custody of the commissioner for a period not to exceed eighteen months with direct placement at the Connecticut Junior Republic.[2]

At the time of the respondent's plea, the court, *Wollenberg, J.*, advised the respondent that he was able to inquire at any point during the canvass if he had a question. The court also advised the respondent's mother, who was present at the hearing, that she, too, could interrupt the court if she had an inquiry. The court then had the prosecutor recite to the respondent the factual basis for each offense. Next, the court conducted a plea canvass to determine whether the respondent's plea was knowing and voluntary. The court asked the respondent, inter alia, his age, what grade he was in at school, if anyone had forced him to plead guilty, if anyone had promised him anything if he pleaded guilty, whether his attorney had informed him of how a trial would work and whether he was satisfied with the representation of his attorney. After the canvass, the court found that "the pleas are knowingly and voluntarily made with the assistance of competent counsel, there is a factual basis for the pleas and the pleas are accepted." After accepting the pleas, the court then asked, "[w]hat is the commitment here?" The probation

[2] The Connecticut Junior Republic is an organization that provides residential and community based care, treatment and education for troubled boys and girls and their families.

officer answered that it was an eighteen month commit-
ment, and the court added that the commitment was
to be served at the Connecticut Junior Republic. The
prosecutor then asked the court to let the respondent
know about "the recommitment possibility." The court
stated, "Well, if this doesn't work and something hap-
pens, you can be recommitted, do you understand that?"
The respondent did not answer until the court informed
the respondent that he needed to answer "yes" or "no."
At that point, the respondent answered: "Yes."

The respondent's commitment was scheduled to
expire on February 28, 2007, but as a consequence of
his behavior while in custody, on January 29, 2007, the
commissioner filed a motion for an extension of the
respondent's commitment. Subsequently, on February
27, 2007, the respondent filed an opposition to the
motion to extend his delinquency commitment. On
March 22, 2007, the court held a hearing on the motion
for an extension of the respondent's commitment and
rendered an oral decision, granting the motion and
extending the respondent's commitment to January 19,
2008, the date the respondent would reach the age of
eighteen. Judge Gleeson found that at the time the
respondent entered his guilty plea, he was advised ade-
quately as to the possibility that his commitment could
be extended. This appeal followed.[3] Additional facts
will be set forth as necessary.

As an initial matter, we must address whether we
are precluded from reviewing the respondent's claim
because it is moot.[4] The respondent's commitment

---

[3] The appeal was filed on April 9, 2007, and oral arguments were heard
before this court on January 2, 2008.

[4] Although the parties did not raise the issue of mootness in the present
appeal, we consider it sua sponte "because mootness implicates the court's
subject matter jurisdiction. It is, therefore, a threshold matter to resolve."
(Internal quotation marks omitted.) *In re William D.*, 97 Conn. App. 600,
603, 905 A.2d 696 (2006), aff'd, 284 Conn. 305, 933 A.2d 1147 (2007).

expired on January 19, 2008, and therefore the commissioner no longer has custody of him, as he no longer is a juvenile. Because there is no practical relief this court can grant the respondent, the appeal is moot. "When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot. . . . It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . .

"We note that an otherwise moot question may qualify for review under the capable of repetition, yet evading review exception. To do so, however, it must meet three requirements. First, the challenged action, or the effect of the challenged action, by its very nature must be of a limited duration so that there is a strong likelihood that the substantial majority of cases raising a question about its validity will become moot before appellate litigation can be concluded. Second, there must be a reasonable likelihood that the question presented in the pending case will arise again in the future, and that it will affect either the same complaining party or a reasonably identifiable group for whom that party can be said to act as surrogate. Third, the question must have some public importance. Unless all three requirements are met, the appeal must be dismissed as moot." (Internal quotation marks omitted.) *In re Steven M.*, 264 Conn. 747, 754–55, 826 A.2d 156 (2003). We conclude that the present appeal meets all three requirements for review under the "capable of repetition, yet evading review" exception to the mootness doctrine.

First, the effect of the challenged action in the present case is of a limited duration. Specifically, a court can

extend a commitment order for no more than eighteen months by statute. See General Statutes § 46b-141 (a) (1).[5] "The effect of the extension, therefore, is limited to eighteen months or less by its very nature. It is accordingly of such a nature that a substantial majority of the cases in which such an order is entered will evade review." *In re William D.*, 97 Conn. App. 600, 604–605, 905 A.2d 696 (2006), aff'd, 284 Conn. 305, 933 A.2d 1147 (2007).

Second, we conclude that there is a reasonable likelihood that the question presented in this case will arise again in the future. The question presented in this appeal is whether the court properly determined that the respondent's original plea was knowingly and voluntarily made when the court did not inform the respondent of his term of commitment or the possibility of recommitment, prior to accepting his plea, and did not inform him of the possibility of an extension of his commitment. This question is likely to arise again any time that a court fails to inform a juvenile respondent about crucial aspects of his plea agreement prior to pleading guilty. Furthermore, the question presented in this appeal will affect a reasonably identifiable group for whom the party can be said to act as a surrogate. It is likely to affect juvenile respondents, similar to the respondent in this case, who may be unaware of the workings of the juvenile justice system but who, because of their age and the law, may be subject to commitment extensions beyond the initial period of commitment.

Finally, the question presented in this appeal is of public importance. Whether a juvenile has been canvassed in a way that renders his plea knowing and

[5] General Statutes § 46b-141 (a) provides in relevant part: "Except as otherwise limited by subsection (i) of section 46b-140, commitment of children convicted as delinquent by the Superior Court to the Department of Children and Families shall be for (1) an indeterminate time up to a maximum of eighteen months . . . ."

voluntary is undoubtedly a question of constitutional magnitude. In the interest of due process and overall fairness, it is important that a juvenile be apprised sufficiently of *all* the aspects of his plea prior to his entering into it. Satisfaction of all three requirements of the "capable of repetition yet evading review" exception allows us to reach and review the respondent's claim on appeal.

On appeal, the respondent's sole claim is that Judge Gleeson improperly determined that the respondent's original plea was knowingly and voluntarily made. Prior to examining this claim, we set forth the legal principles that guide our resolution of it. "Our cases instruct that we conduct a plenary review of the circumstances surrounding the plea to determine if it was knowing and voluntary." *State* v. *Groppi*, 81 Conn. App. 310, 313, 840 A.2d 42, cert. denied, 268 Conn. 916, 847 A.2d 311 (2004).[6] "A defendant entering a guilty plea waives several fundamental constitutional rights. . . . We therefore require the record affirmatively to disclose that the defendant's choice was made intelligently and voluntarily." (Citation omitted; internal quotation marks omitted.) Id., 314.

The respondent argues in his brief that Judge Gleeson improperly found that the plea was knowingly and voluntarily made without Judge Wollenberg's inquiring of the respondent whether he was aware of the possible penalty or any extensions or modifications of the penalty. The respondent notes that it was only after the plea was accepted that the court first inquired of the probation officer as to the respondent's sentence. Furthermore, the respondent noted that even after the court informed him of his sentence, the court still failed

---

[6] Although *Groppi* involves the plea of an adult, *Groppi* cites *In re Jason C.*, 255 Conn. 565, 767 A.2d 710 (2001), a case involving the plea of a juvenile, for the proposition that the review of whether a plea was entered knowingly and voluntarily is plenary. *State* v. *Groppi*, supra, 81 Conn. App. 314.

to make any inquiry of the respondent's understanding of the sentence, the maximum penalty or the possibility of an extension. Finally, the respondent noted that it was only at the suggestion of the prosecutor, after the plea had been accepted, that the court informed the respondent of a "recommitment possibility."

The respondent argues in his brief that because the court did not apprise him of the possible penalty, the possibility of an extension or the possibility of a recommitment prior to accepting his plea, he did not have all the relevant information required to make his plea knowing and voluntary. We agree with the respondent and conclude that the court improperly determined that his original plea was knowingly and voluntarily made.

Both case law and Practice Book § 30a-4[7] mandate what a court must address in canvassing a juvenile respondent. In *In re Jason C.*, 255 Conn. 565, 570–71, 767 A.2d 710 (2001), our Supreme Court stated that "when accepting a plea agreement, due process requires a court to advise a juvenile of possible extensions to the delinquency commitment." Furthermore, the respondent cites Practice Book § 30a-4, which provides in relevant part: "To assure that any plea or admission is voluntary and knowingly made, the judicial authority

---

[7] Practice Book § 30a-4 provides: "To assure that any plea or admission is voluntary and knowingly made, the judicial authority shall address the child or youth in age appropriate language to determine that the child or youth substantially understands:

"(1) The nature of the charges;

"(2) The factual basis of the charges;

"(3) The possible penalty, including any extensions or modifications;

"(4) That the plea or admission must be voluntary and not the result of force, threats, or promises, apart from the plea agreement;

"(5) That the child or youth has (i) the right to deny responsibility or plead not guilty or to persist if that denial or plea has already been made, (ii) the right to be tried by a judicial authority, (iii) that at trial the child or youth has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him or her, and the right not to be compelled to incriminate himself or herself."

shall address the child or youth in age appropriate language to determine that the child or youth substantially understands . . . (3) [t]he possible penalty, including any extensions or modifications . . . ."

In the present case, the court did not address the penalty the respondent would receive or the possibility of recommitment prior to accepting his plea. Furthermore, the court did not inform the respondent of the possibility of the extension of the commitment. Finally, in mentioning recommitment, the court did not ensure that the respondent substantially understood the meaning of the term. The respondent correctly states in his brief that "[t]he term 'recommitment' is used when a committed delinquent is returned to court on a new offense and faces the possibility of being committed for a new term that begins during his present commitment period." In contrast, an extension of a commitment, as sought and ordered in the present case, occurs at the end of a delinquent's term. A delinquent, therefore, can face the possibility of serving eighteen months for the original offense and another eighteen months because of poor behavior during a placement. Furthermore, a juvenile may have his or her commitment extended without committing another offense. The court did not explain to the respondent the distinction between a recommitment and an extension of a commitment.

Under both case law and our rules of practice, the court is required to address the penalty and the possibility of an extension of commitment and of a recommitment in a manner that ensures that the juvenile substantially understands the issues. "[I]n order for a plea of guilty to be constitutionally valid, it must be *equally* voluntary and knowing . . . . [I]t cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts. . . . An understanding of the law in relation to the facts must include all relevant information concerning the

sentence. The length of time a defendant may have to spend in prison is clearly crucial to a decision of whether or not to plead guilty." (Emphasis in original; internal quotation marks omitted.) *In re Jason C.*, supra, 255 Conn. 573–74. In the present case, the respondent could not have possessed an understanding of the law in relation to the facts because the court, in canvassing him, did not include all the relevant information concerning the commitment. As a result, we conclude that the plea of the respondent was not knowingly and voluntarily made.

The judgment is reversed and the case is remanded with the direction to deny the motion to extend the commitment.

In this opinion the other judges concurred.