******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

IN RE TIARRA O.*

(AC 37781)

DiPentima, C. J., and Lavine and Keller, Js.

*Argued September 8—officially released October 21, 2015***

(Appeal from Superior Court, judicial district of Fairfield, Child Protection Session, B. Kaplan, J.)

*David E. Schneider*, *Jr.*, for the appellant (respondent Wayne D.).

*Elizabeth Bannon*, assistant attorney general, with whom were *Benjamin Zivyon*, assistant attorney general and, on the brief, *George Jepsen*, attorney general, for the appellee (petitioner).

*Ellen A. Morgan*, for the minor child.

*Opinion*

LAVINE, J. The respondent guardian, Wayne D., appeals from the judgment of the trial court adjudicating his former ward, Tiarra O. (youth), uncared for in that her home cannot provide the specialized care which her physical, emotional, or mental condition requires pursuant to General Statutes § 46b-129. On appeal, the respondent claims that the trial court improperly (1) found that the youth was uncared for in light of the court's finding that she was not neglected, and (2) denied his motion to vacate the order of temporary custody and return the youth to his care.[1] We dismiss the appeal for lack of jurisdiction as it is moot.

The trial court made the following findings of fact that are relevant to the respondent's claims on appeal. In October, 2005, the Court of Probate for the District of Fairfield appointed Deborah D., the respondent's mother, guardian of the youth. In July, 2011, Deborah D. filed in the Probate Court a resignation of guardian and appointment of successor guardian petition. She wished to be removed as guardian[2] and have the respondent appointed successor guardian. The Department of Children and Families (department) assessed the respondent and found him to be a chronic user of marijuana who refused treatment. The department did not recommend that the respondent be appointed guardian and so advised the Probate Court. Nevertheless, the Probate Court ordered that Deborah D. remain the youth's primary guardian for decision-making purposes and appointed the respondent coguardian.

On February 19, 2014, the petitioner, the Commissioner of Children and Families, filed a petition alleging that the youth was neglected in that she was being denied proper care and attention, physically, educationally, emotionally or morally; or was being permitted to live under conditions, circumstances, or associations injurious to her well-being. The petitioner subsequently amended the neglect petition to allege that the youth was uncared for in that her home cannot provide the specialized care her emotional or mental condition requires. See General Statutes § 46b-120 (8).

At the time the petitioner filed the neglect petition, she also filed an application for an order of temporary custody. Deborah D., and the youth's biological mother, Blanca O., agreed to the order of temporary custody,[3] but the respondent contested it. The court held a hearing on March 13, 2014, and sustained the order of temporary custody.[4] The respondent later filed a motion to vacate the order of temporary custody and have the youth returned to his care. The motion to vacate was consolidated with the uncared-for petition.

A trial on the uncared-for petition and motion to vacate was held on October 16, 2014.[5] During the trial on the uncared-for petition, the transcript of the order

of temporary custody hearing was placed into evidence. The court issued its memorandum of decision on February 11, 2015. After setting forth its evidentiary findings, the court found by a fair preponderance of the evidence that the youth was uncared for in that her home could not provide the specialized care that her physical, emotional or mental condition required, and that it was in her best interest that she be committed to the custody of the petitioner until further order of the court. The court found that she was not neglected. The court also denied the respondent's motion to vacate the order of temporary custody. The respondent filed the present appeal.

A few days before oral argument in this court, the youth turned eighteen years old and her commitment to the petitioner had expired. See General Statutes § 46b-129 (j) (4). This occurrence potentially rendered the respondent's appeal moot. He argued, however, that there are collateral consequences to the court's finding that the youth was uncared for and therefore this court could provide relief if he prevailed on appeal. We ordered the parties to submit supplemental briefs addressing "whether, in light of the fact that the [youth] is now [eighteen] years old, there are any collateral consequences that prevent this action from being dismissed as moot."

"When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot. . . . It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions . . . ." (Internal quotation marks omitted.) *In re Fabian A.*, 106 Conn. App. 151, 155, 941 A.2d 411 (2006). Mootness deprives the court of subject matter jurisdiction. "Mootness is a question of justiciability that must be determined as a threshold matter because it implicates [this] court's subject matter jurisdiction . . . ." (Internal quotation marks omitted.) *Collins* v. *Collins*, 117 Conn. App. 380, 386, 979 A.2d 543 (2009).

"In determining mootness, the dispositive question is whether a successful appeal would benefit . . . [the] [respondent] in any way. . . . In other words, the ultimate question is whether the determination of the controversy will result in practical relief to the complainant. . . .

"Importantly, [u]nder the collateral consequences doctrine, this court may retain jurisdiction and consider a claim that otherwise has been rendered moot when a litigant shows that there is a reasonable possibility that prejudicial collateral consequences will occur. . . . Accordingly, the litigant must establish these consequences by more than mere conjecture, but need not

demonstrate that these consequences are more probable than not. . . . Where there is no direct practical relief available from the reversal of the judgment . . . the collateral consequences doctrine acts as a surrogate, calling for a determination whether a decision in the case can afford the litigant some practical relief in the future. The reviewing court . . . determines, based upon the particular situation, whether, the prejudicial collateral consequences are reasonably possible." (Citation omitted; internal quotation marks omitted.) *In re Julie J.*, 150 Conn. App. 387, 392, 90 A.3d 406 (2014).

In his supplemental brief, the respondent asserted that he faces two collateral consequences pursuant to the court's finding that the youth was uncared for: first, any future neglect petition involving him will note that the youth in this case was found to be uncared for and placed in the custody of the petitioner; and second, the department will use the uncared for adjudication and subsequent commitment as a partial basis to determine that he should be placed on the department's central registry. The petitioner argues that the appeal is moot as there is no practical relief this court can afford the respondent. The petitioner relies on *In re Claudia F.*, 93 Conn. App. 343, 888 A.2d 1138, cert. denied, 277 Conn. 924, 895 A.2d 796 (2006), and *In re Alba P.-V.*, 135 Conn. App. 744, 42 A.3d 393, cert. denied, 305 Conn. 917, 46 A.3d 170 (2012). We agree with the petitioner.

The procedural posture of *In re Claudia F.* is on point with that of the present case. In that case, the respondent mother appealed from a neglect adjudication but, during the pendency of the appeal, voluntarily consented to the termination of her parental rights. *In re Claudia F.*, supra, 93 Conn. App. 345. On appeal, this court concluded that regardless of the respondent mother's claims regarding the findings related to the neglect petition, the department was on notice that there were concerns about her ability to parent as a result of an order of temporary custody from which the respondent mother had not taken an appeal. Id., 348. Specifically, this court found that the trial court had made findings concerning parental neglect pursuant to the order of temporary custody from which the respondent mother did not appeal, and that the evidence admitted at the neglect proceeding was essentially the same evidence admitted at the hearing on the order of temporary custody. Id. This court, therefore, dismissed the appeal as moot stating that the respondent mother had "failed to show how the court's finding of neglect would produce collateral consequences above and beyond the consequences that could flow from the order of temporary custody." Id., 349.

In the present case, the petitioner obtained an order of temporary custody that was sustained by the trial court. The respondent failed to file an appeal from the order of temporary custody to challenge the court's

factual findings. "[T]emporary custody orders are immediately appealable because an immediate appeal is the only reasonable method of ensuring that the important rights surrounding the parent-child relationship are adequately protected . . . ." (Internal quotation marks omitted.) *In re Shamika F.*, 256 Conn. 383, 385, 773 A.2d 347 (2001). The factual circumstances surrounding the petitioner's obtaining custody of the youth pursuant to the order of temporary custody are part of the department's records. In addition, the transcript of the order of temporary custody hearing was placed into evidence at the trial of the uncared-for petition. The respondent has failed to demonstrate how the finding that the youth was uncared for would produce consequences above and beyond the consequences that could flow from the order of temporary custody.

As to the respondent's assertion that the department will use the finding that the youth was uncared for and her commitment to the petitioner's care as a partial basis to place him on the department's central registry, the respondent has failed to demonstrate a factual basis for his concern. There is no record of a substantiation or registration pursuant to General Statutes § 17a-101k[6] regarding the respondent. As in *In re Alba P.-V.*, where the respondent mother's children were found neglected, the respondent in the present case has "provided no indication that [his] ability to challenge [his] placement on the central registry through the administrative process described in . . . § 17a-101k and, thereafter, the court appeals process, would be foreclosed by dismissal of the present appeal." *In re Alba P.-V.*, supra, 135 Conn. App. 753. The respondent therefore has failed to demonstrate that collateral consequences bar the dismissal of his appeal pursuant to the mootness doctrine.

The appeal is dismissed.

In this opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** October 21, 2015, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The attorney for the youth, a minor at the time the appeal was filed, has adopted the brief of the respondent.

[2] Deborah D. represented that she could no longer care for the youth due to the youth's poor behavior.

[3] The youth's biological father was defaulted when he failed to appear at the hearing on the order of temporary custody.

[4] Subsequently, the trial court, *Stevens, J.*, granted the motion to remove Deborah D. as coguardian of the youth and dismissed her from the neglect or uncared-for petition.

[5] The youth's biological mother failed to appear at the hearing and was defaulted.

[6] General Statutes § 17a-101k is entitled: "Registry of findings of abuse or neglect of children maintained by Commissioner of Children and Families. Notice of finding of abuse or neglect of child. Appeal of finding. Hearing procedure. Appeal after hearing. Confidentiality. Regulations."